All right, our second case this morning is number 19-14771, Anthony Foster versus the United States. And Ms. Golder, before you begin, I want to recognize on behalf of the court that you are court appointed for Mr. Foster. And we want to thank you for your service, not only to him, but to the court as well. We really do appreciate it. Thank you, Jeff. With that, whenever you're ready, you may begin. Good morning, Your Honor. As Judge Jordan just said, I'm Randi Golder on behalf of Anthony Foster. The case basically deals with an issue that's coming before the court, I think, in several cases. There's another case being argued before two out of the three of you later this week on Thursday. It deals with the relationship between Beeman and Stromberg. What we have in this case is a classic Stromberg issue. The issue is what happens when an indictment charges three predicate crimes to a 924C. And one of those credits, one of those predicate crimes no longer qualifies because it's unconstitutionally vague. And you have a general jury verdict that doesn't specify what the jury based its conviction on. In Mr. Foster's case, there are actually two counts that involve that, a conspiracy 924O and the actual 924C count carrying a firearm in relation to a drug trafficking crime or a crime of violence. The crime that's been invalidated here is the conspiracy to commit Hobbs Act robbery, and that's been definitively decided in this circuit that it does not qualify. So what role, if any, does Beeman play? And our position initially is that Beeman really has a very, very limited application. Beeman was an ACCA case in the sentencing context. Let me ask you a question. What do we do with the opinion that was decided and published this week in Garcia, which certainly addresses the application of Beeman? It doesn't address Stromberg. It doesn't even mention Stromberg. And it's a very troubling case because- Maybe that was a mistake, maybe it wasn't. That's an argument you can make about why that's the opinion reached the wrong conclusion. But am I not bound by Garcia? Our position is you're not. And the reason is because it doesn't address Stromberg. You're bound to follow Supreme Court precedent. That's your first and foremost obligation. You can't take a panel opinion and say, we're going to disregard a whole line of valid binding Supreme Court precedent because the panel didn't address it in a case where the appellant was unrepresented and wasn't given a fair chance for briefing. There are all kinds of issues and problems with the Garcia case. And it just came out just two working days ago. I would say if the court's really concerned about Garcia, we probably need supplemental briefing on it. But there are serious, serious problems with applying Garcia that raise real due process issues. And the Supreme Court has already indicated it's concerned about getting precedential value where there hasn't been a fair opportunity for briefing. And there hasn't been proper representation by counsel. And Garcia raises both of those issues. And therefore, we would say it's troublesome. In addition, you have a prior opinion, Tucker versus Pfeiffer by this court back in 1987, where the court viewed itself, it actually said, we don't view ourselves as violating the prior panel rule. Rather, we're simply discharging our duty to follow clearly controlling Supreme Court precedent. If the panel had expressly considered the overlooked Supreme Court decisions, we would be bound by its interpretation and application. But because it didn't. You would agree, I take it that the kind of era that the Supreme Court was talking about in Stromberg and Yates, it's not a structural era. It doesn't automatically yield or mandate a vacator. It would require us then to apply harmless error review, doesn't it? I'm not sure, because the courts do talk about two kinds of error, trial error, and structural error. And granted, trailer is the most common kind. Structural error is rare. But we're in a rare situation here. Doesn't the Supreme Court tell us in Hedgepeth v. Pulido, that the Stromberg-Yates line of kind of error does not automatically mandate vacator? And that we have... They talk about trial error. We would still have to look at whether the error was harmless or not, wouldn't we? Not if it's structural, but I mean, I think the error in this case is not harmless and we're prepared to argue that. My only concern about waiving the argument that it's structural is I trial court, the problem arises from the charging document itself. And I see that as a fundamental problem. Does this charging document actually convey jurisdiction on the court if one of the possible grounds is not a crime? And so we have a jurisdictional problem that's based in the charging document, not in evidence presented at trial. And the reason I'm concerned about it is when you evaluate harmlessness in the trial error type of Stromberg issue, you look at what happened in the trial and you say, is the error harmless? How did this error come about? Are the other things that happened in the trial mitigating? Even in jury instruction cases, which Hedgepeth and a lot of them are, you look at what instructions did the court give and can that be remedied? Are there other things here? You can't say there was a problem in the presentation of the evidence. The jury instructions were actually accurate at the time they were given. So you can't look at it and say there's other evidence. And so really this little bit of evidence that was presented in error would not be significant. Likewise, with jury instructions. Isn't the problem here caused by the general verdict? Yes, absolutely. It's caused by the general verdict and the fact that the indictment charges a potential non-crime. But if there was a verdict with special interrogatories, that alleged error in the indictment wouldn't make a difference because you'd know exactly which conviction was tied to which predicate offense, right? Assuming the jury verdict didn't list the unqualifying predicate, yes. Oh no, because if you had a jury say that both the unqualifying predicate and the each one of the given counts at issue would have relied in part on a qualifying predicate. Am I mistaken? That overlooks a line of cases including Simpson out of this circuit that says if they've alleged three predicates, you can't have three crimes. It only is the least serious conduct. You have to look at the crime with the least serious conduct because you can't be convicted on all three predicates. And there's a whole line of cases that say that in the Stromberg context. In fact, all of the Stromberg cases say that, that you can't have the verdict be based on- Two minutes, counsel, two minutes. Thank you, Stephanie. You can't have the verdict based on all three. It has to be based on one. And since we don't know, the line of cases say you have to look at the least serious conduct, which in this case is the Hobbs Act conspiracy. Can I ask you a different question, Ms. Goldberg? Just moving aside from the Stromberg line of cases, why haven't you procedurally defaulted here? Isn't this case- I have to- Procedurally or precisely, can you show cause and prejudice or actual innocence here? Yes, we can. But my first line is that procedural default doesn't apply in this rare instance of this particular provision of the habeas statute because by its nature, it requires that the cause of action did not exist previously. So how could we be procedurally defaulted for failure to raise something that we could not have raised? And so our position is that the procedural default rule doesn't apply. And a statute by Congress conveying our authority to proceed in this rare circumstance supersedes any procedural rule the court creates for its own administration within the courts. Number two, by its nature, we have shown cause because there was no cause of action prior. How can you show prejudice? I'm sorry? How can you show prejudice here? Because my client potentially is convicted of a non-crime. We have a conviction of something that's not a crime. And that is the court- all of the cases say that is per se prejudicial. Let me ask the question in a slightly different way. I'm just trying to get your help here, Ms. Golder. Sure. Is there any way a jury could have found only one predicate to support the crime and not the other? Yes, and I think the case law says the jury could only find- Aren't these issues inextricably bound together? That if someone goes in and conspires to commit a robbery of a stash house where the object is to get access to a large quantity of dope, and the charges include both drug crimes and Hobbs Act crimes, whether described as conspiracy or substantive drug crimes, is there any way a jury could find one and not the other? Yes, because the question is, in what context was the firearm possessed? The question is not whether the conspiracies are based on the same conduct. The question is, in what context did this person possess a firearm? And there we get into the facts of the case and the fact that my client was not involved in any of the pre-planning or anything else and really made no statements on his own. He basically shows up at a final meeting and he has a firearm on him. And there is no proof as to what that firearm, if anything, was going to be used for. This isn't a situation with a pile of firearms in the car and they're going to go use those firearms to commit the crime. Nobody really knows that my client even has this firearm on him. And arguably, it's there for his own protection and safety in meeting with these people that, you know, some of whom he does not know. So the question needs to focus on, in what context was the firearm used? Not whether the conspiracies are based on the same conduct, potential conduct. And of course, here we have no actual doing of the crime. We only have the discussions. And my client's role in all of that is very limited. Thank you. All right, Ms. Golder, thank you very much. You've saved your time for rebuttal. Thank you. Ms. Sundaram, whenever you're ready. May it please the court, counsel. Good morning, Your Honor. Sivashree Sundaram for the United States. Your Honor, at the outset, the Garcia case precludes relief for Mr. Foster. He cannot meet his burden of proof under Beeman, as his predicate offenses of conspiracy, Hobbs Act robbery, and the drug trafficking offenses were inextricably intertwined. And moreover, the jury found him guilty beyond a reasonable doubt of those predicate offenses. To address the Stromberg line of argument, although we don't need to get there, because Garcia made it plain that Beeman is the standard of proof applicable in this scenario. Hedgepeth v. Pulido is the controlling Supreme Court precedent. Hedgepeth made it very clear that the Stromberg and Yates line of reasoning did not take into account harmless error analysis. And so, therefore, the whole Stromberg line of reasoning is invalid, Your Honor. It's Hedgepeth v. Pulido, and it would be the correct heightened harmless error standard that would apply if even applicable here. But again- Let me ask you this question. So we're obviously bound by the decision of another panel that preceded us. But why didn't the Garcia panel err by not considering Stromberg and its progeny, no matter how it might have resolved the effect of Stromberg and his progeny? It did not err, Your Honor, because there's no need to even reach Stromberg and his progeny. The petitioner needs to first show entitlement to relief on his claims in this habeas context, which is where we're at. And in order to do so, the case law in the circuit is clear that under Beeman, he must- No. The COA standard does not require a petition to show entitlement to relief. It requires him to show that reasonable jurists could disagree about the proper outcome. And though, obviously, a court has to take a peek at the merits to make the COA determination, the Supreme Court has, I think, two or three times reversed appellate courts for doing a merits decision when it's supposed to be doing a COA decision. So I don't think your starting point that the petitioner and Garcia had to show entitlement is correct. That's the merits issue, not the COA issue. I apologize, Your Honor. I mean, what I mean is, in general, in these 2255 cases, these petitioners are required to show entitlement to relief on their claims. So in general, Beeman is what controls and we don't ever need to get to the harmless error analysis because there has been no error shown. He can't show entitlement to relief on his claims. And so because Mr. Foster can't show entitlement to relief on his claims under Beeman, we don't even need to get to the harmless error analysis. And again, I understand that we are bound by Garcia. So you can take that as a given, at least from me. Having said that, Beeman is a very, very different case. Beeman involves whether or not a habeas petitioner can show that his sentence was based only on the now unconstitutional residual clause of the ACA. This is a guilt scenario with a general verdict and a potentially invalid predicate for that verdict. Those are completely different scenarios. Why was Garcia right in transporting Beeman into this context? Your Honor, because as the Beeman case itself indicated, Beeman was not creating a new rule. Beeman was relying on a long line of precedent that petitioners need to prove entitlement to relief on their claims, that they have the burden of proving that. So the fact that Beeman was in the context of a sentencing enhancement, whereas here we're talking about a conviction, there is no issue with that distinction. Because again, Beeman was not a new rule. It was based on this long line of precedent that 2255 petitioners do carry that burden of proof. And because the ACA invalidated the residual clause there, and Davis here invalidated the residual clause of 924C3B, that analogously transfers the Beeman analysis over here. However, again, Beeman was based on a long line of precedent that says that 2255 petitioners bear that burden of proof. Let me ask the question this way, if I can. If Beeman was inapplicable, let's just hold Garcia aside for one moment, would we jump straight to harmless error? And if the answer is yes, we would, that would put the burden directly on the government, would it not? The first answer, Your Honor, is harmless error is a two-step analysis. Sometimes we jump to that second step, because for all practical purposes, it's just easier or it's a similar analysis. But no matter what, there still has to be an error that's shown first. And it's only once that error is shown, which that error, the burden of showing that error is on the petitioner. If the petitioner can meet that burden of showing that error, then yes, then we get to the Brecht-Hyten harmless error standard for which the Supreme Court has said it's not necessarily a burden of proof. It's more what is in the judge's mind or what is in the court's mind. The error here is the jury may have relied on a predicate that is no longer a predicate. And that, therefore, the jury may have convicted for something that it simply could not convict on. Without the predicate, if they relied upon the conspiracy to violate the Hobbs Act, the charge, the conviction is invalid. That's the claim that they make here. I'm just trying to understand how we would address the issue, in your view, in the absence of Garcia and in the absence of Beeman applying. In the absence of Beeman, then, if the petitioner shows this error, then we would go to the Brecht-Hyten harmless error standard in which under even that standard— right to the Brecht standard. The problem, of course, there is it would place the burden initially on the government, and there's no question that the petitioner bears the ultimate burden of persuasion in all 2255 applications, right? Yes, Your Honor. I think that the question would be, to what extent does the petitioner, in that instance where we take Beeman out of this, to what extent does the petitioner need to show that there is an error? Is it simply that they show the possibility that they could have been convicted of a non-offense, or is it that they have to show that something more, that there was some actual prejudice there? Assuming in favor of Mr. Foster at that point that we just jumped to the harmless error analysis, even at that point in this scenario where the predicates are so inextricably intertwined, and where the jury found Mr. Foster guilty of all of those predicate offenses beyond reasonable doubt, there can't be any harmless— there can't be any error that is harmful in this scenario, Your Honor. Is this case procedurally defaulted? Yes, it is, Your Honor. Even if Mr. Foster could show cause, he certainly cannot meet his burden of showing actual prejudice. There's no error here that so infects this entire trial. Again, the analyses are similar, so I may be repeating myself a bit, but the predicates were so inextricably intertwined with the nature of these reversing stash-health-robbery cases, the jury found Mr. Foster guilty of all of those predicate offenses beyond reasonable doubt. So he certainly cannot show actual prejudice, and he also cannot then show actual innocence, which in the procedural default context means factual innocence and not legal innocence. There's no claim of factual innocence here. He cannot demonstrate that at this point, and therefore at the outset, his claim is procedurally defaulted. Counsel, you didn't raise this in district court, did you? I'm sorry, Your Honor? Did you raise procedural default in the district court? It was raised at the hearing, Your Honor. The analyses kind of overlapped. So there was some, for all practical purposes, the analysis overlapped. So there was some discussion of both, but I do believe the district court did discuss procedural default. Okay. Well, if you could point that out, I would appreciate it. Yes, Your Honor. That is, if you can give me one minute. That was at docket entry 13 in the civil case. I'm sorry, docket entry 19, Your Honor. That's okay. Docket entry 19 in 19-62215. I understood from the discussion that there was an oral argument before the district court on the motion, wasn't there? Yes, Your Honor. On one petition. And in it, all the government said was, one, we rely on the brief that we had submitted in opposition to the co-defendants petition. And then you went into the merits of the predicate acts and so on and so forth. Would that be a fair statement of what you did before the trial? Yes, Your Honor. Now, you didn't have a chance to file a written response here, but there was no express statement about procedural default other than relying upon the reference in the other case. Do I have that right? In terms of our argument, Your Honor, or in terms of the order? Yes. Judge Ginsburg is asking you whether you preserve the argument. Of course. Yes, Your Honor. I don't think that we affirmatively. Or whether you otherwise waived it. And the transcript, you didn't expressly utter the words procedural default. The only reference was we rely on our argument in the other brief, which contained the procedural default argument. Is that a fair statement of what happened at the oral argument on the issue? I believe that's correct, Your Honor. Thank you. Counsel, do you know where that appears in the transcript? The reference, I'm looking at that right now, Your Honor. We discuss on page three of Doctrine 19 that our position is similar to Mr. Foster's co-defendant. And so I don't believe we affirmatively waived the procedural default argument there, Your Honor. But in any event, as we have discussed. The statement is that this judge, our position is similar to Mr. Foster's co-defendants that had filed these same motions that Mr. Foster's motion should be denied as well. That's it? Yes, Your Honor. Not much. Now, let me ask you the question, though, to follow up on this. You did not file a brief here to state your position in writing? That's correct, Your Honor. Government, the court ruled a few days after the oral argument, but before you had briefed it. Had your time to file a brief expired? I believe it did, Your Honor. The court in this case. Two minutes, counsel, two minutes. Thank you, Ms. Titha. You're welcome. I was looking at the docket entry again yesterday, and I believe the court only gave us 10 days to respond, and we did not file a response within that time, Your Honor. And then the court set the hearing, and then we ended up arguing the issues at the hearing. At that point. If Your Honors have no further questions, the government would rest on its papers and ask that the court affirm the district court's denial of Mr. Foster's 2255. Right. Thank you very much, Ms. Sunderman. Right. Ms. Golder, you've got your time left for rebuttal. Yes, Judge. Um, let me first address where you left off. Which is that the government never responded to the habeas petition. The court ordered them to respond, and they still didn't respond. So they did waive the procedural default argument. It was never, ever raised in Foster's case. And I was the one that handled this in the district court. And I walked into that oral argument before the district judge. And all of a sudden, I'm being told to reference something, that were never filed in my habeas case. Things that are not part of Mr. Foster's record. And that's the denial of due process to Mr. Foster. Because you can't ask him to walk in and look at something not filed in his case. Ms. Golder, just so that I'm clear, I take it the brief that the government was referencing, or the position the government was referencing, albeit inarticulately, was never submitted to the court here. Correct. All of a sudden, in the final opinion of the district court, which is document 13, he references, in the co-defendant's motion to vacate, the government contended that they were procedurally defaulted. That is the first time in this whole proceeding it ever came up, was that reference by the district court. The district court also goes on to say, the government contends Foster cannot establish prejudice. Except they never filed anything contesting prejudice. I dare say, if the defense showed up and had filed nothing, we would be barred from those arguments. And here the government filed nothing contesting the petition. That's not to say the court didn't have an obligation to consider the issues, it does. But it can't do so by looking at somebody else's case. I can't possibly be put on the burden of having, let's say it's a 30 defendant case. Do I have to go look through 30 habeas petitions to see what went on in every one of those cases? Well, how many defendants were there? How many defendants were there? In this case? Yeah. I think three went to trial. I think three went to trial. And there may have been two more that pled. So the same judge was familiar with all the cases, right? He was. And that's part of the problem is. I can readily imagine the context in which would be perfectly sufficient to say, Judge, we're making the same argument you submitted in other briefs. We're all familiar with it, correct, aren't we, Judge? Yes, we are. Well, that's all they would have had to file then, isn't it? It would have been a very simple filing. But they didn't file anything. And from my standpoint, there's no. First of all, I don't have access other than through PACER if I'm made aware of a co-defendant's habeas case. Then I guess I can go pull up documents and look at it. But nobody made me aware that there was a document filed in another case that the government was seeking to have applied to Mr. Foster. Also, I wanted to get. At the hearing, you didn't say when you first got a chance, anything in response to what argument? What are you talking about from another case? Am I correct? Well, I'm familiar with the arguments. This isn't the only case I have on this issue, unfortunately. So it's not as though I was unprepared. And I had briefed most of this in my brief. Well, I'm not saying you were unprepared. I'm suggesting you were surprised but never complained about it. Well, the surprise came when the court's order issued. Not at the hearing itself. Well, when the government referenced things in other briefs in other cases, don't see you having said, I'm not aware of that. I'd like a chance to know what you're talking about. I think what I said, I think I did at some point say to the judge, you can't apply to something filed in somebody else's case to me. I believe I did say that. Well, perhaps it was around the new hearing. I don't know. Not at this point. Yeah. Also, the government's application of Beaman is really, really troublesome. Because what the government is seeking to do is wipe out Stromberg, Strickland, and every other Supreme Court case that sets specific standards for different types of habeas claims. The government is trying to claim that the 11th Circuit Beaman decision wipes out all that Supreme Court precedent. Because now do you apply it in the ineffective assistance of counsel situation? They're certainly looking to supersede Stromberg with it. And they're looking to place an impossible burden on us. Because to say we have the burden of showing what was in the mind of a jury is something that can never, ever be shown because of the nature of jury proceedings. So the burden would be not just a high one, but an impossible one to surmount. All right, Ms. Golder. Thank you very much, Ms. Sundrum. Thank you very much as well. We appreciate the argument.